Morgan, J.
Plaintiffs purchased from Bernard Marigny a strip of land fifty feet wide. The purchase was made on the twenty-third February, 1830. The title of Bernard Marigny to the land in question can not be denied. The land was bounded on either side by a public street.
*163 On the fifth March, 1830, the City Council authorized the plaintiffs, during the whole period of the existence of their charter, to cause their road to run in the street, road, or walking avenue, the whole to be established under the direction of the surveyor, and the mayor was authorized to allow "them the use of the street, in so far as no inconvenience should result therefrom to the public. The quantity of the public road to be used by them was not to exceed twelve feet.
Acting under this authority the plaintiffs erected a depot which covered their own land; the outside pillars thereof, side walls, side columns, and other portions of the depot rested upon the two strips of twelve feet each on either side of their property. A portion of their track was also laid by them. The buildings were erected within a reasonable time after the passage of the ordinance, and from that time until the year 1870 they were in the peaceful and unrestrained possession and enjoyment of the same.
In July, 1870, the Common Council passed an ordinance by which they revoked the permission which had been given to plaintiffs to use these strips. The mayor shortly thereafter wrote to plaintiffs directing them to remove the obstructions from these strips. They applied for an injunction to protect their tracks as well as their depot. .A rule was taken to set aside the injunction under article 307 of the Code, of Practice, reserving to plaintiffs the right to recover from the citysueh damages as might be sustained by such dissolution if a definitive judgment should be rendered in their favor. The rule was made absolute ; the motion to bond without furnishing security was granted, and the injunction dissolved in so far as to restrict the defendants in their legislative power to control and regulate the two strips of land of twelve feet in width which was in question, and in so far as it restrained the defendants from removing or causing to be removed the obstructions upon these strips ; the tracks, however, were not to be interfered with. This on the third September. It seems that a suspensive appeal from this judgment was applied for and denied. Application was then made to this court for a mandamus compelling the district judge to grant the appeal, and the preliminary order issued. What became of it, however, does not appear.
The then mayor of the city declares that he had told an officer to be ready if the injunction was dissolved to remove the building at once; that he was informed of the decision of the district judge dissolving the injunction, and that, as he believes, within an hour or two afterward, he gave a written order to the officer in which he directs him “ to have removed the obstructions from two strips of land twelve feet in width on Elysian Fields street, bordering the space formerly reserved by Bernard Marigny as a canal and covered by an old depot of the *164 Pontchartrain Railroad Company.” He was also instructed not to disturb the railroad track, or any part of the depot, except so far as might be necessary to clear the strips of land aforesaid.
The officer, with a large force, proceeded at once to the execution of this order. On the same day, the president of the company addressed a letter to the mayor in which he notified him that men were then tearing down their depot; that the judgment of the district court decided only that the obstructions upon the two strips be removed, but that the body of men to whom he referred were going far beyond the judgment of the court, and were inflicting damages of a serious nature upon the private property of the company, and while he asserted that he did not acquiesce in the judgment which was being executed, he asked him to arrest the wholesale destruction of the company’s property.
On this protest and request no action was taken, no answer Was .made. The entire edifice was destroyed. The work of destruction commenced in the afternoon of Saturday, the third of September. It continued during that night, during all of the following Sabbath, and through the whole of that night. On Monday morning the building had ceased to exist. The materials were all carried away and lost to the plaintiffs.
The object of this suit is to recover from the city the value of the property thus destroyed and the damages consequent thereupon. There was judgment in favor of the plaintiffs for $34,428. Defendant has appealed.
The conduct of the mayor was in our opinion reckless and illegal; the damage which it caused was large and unnecessary. He had no right, under any circumstances, to take the law into his own hands. Admit that, the judgment of the district court was in favor of the city. That judgment, like other judgments, could only be executed by the proper officers of the law. It was the province of the court to see that its orders were obeyed. It was no part of the mayor’s duty to enforce its decrees. And if it was, the injunction which the plaintiff obtained ■ was not set aside in so far as it restrained the defendant from removing or causing to be removed the obstructions which were upon the property of the city. There was no authorization to tear down the whole building and leave the wreck thereof to be plundered by any one who chose to help himself.
The damage was caused by the city and its officers.' It is, therefore, responsible.
The building was necessary to the plaintiffs. It was used as a depot. There goods were received and shipped. It was an adjunct, and a *165 valuable one, to another depot which they owned in the upper portion of the city.
Some of the witnesses of the defendant say that it was not used as a depot; some that it was a nuisance; that it was used for filthy purposes; that it obstructed the view* from the neighboring houses, and interfered with the river and the free circulation of air, and deteriorated the value of property in its vicinity. One of them attributes his having been robbed to the proximity of that building to his residence. But the same witnesses show that everything in that locality is more or less dilapidated; that the buildings are mostly out of repair; that it is infested with dance houses frequented by lewd and abandoned women. It seems to us that the police authorities of the city are more to blame for this state of facts than the freight depot of a railroad company.
On the other; hand, the officers of the company show that the depot was much used. The testimony of the witnesses who knew the building best, says that the building though old was good ; that it was built of the best brick, cypress, cedar, iron, and covered with the best slate.
Pilié, who is certainly authority upon such subjects, says that “ it was perfectly practicable in September, 1870, for the city to have removed the portion of the depot which encroached upon the two strips of twelve feet;” and he describes, satisfactorily, we think, how this could be done, at a cost of not more than $6000, and in about three weeks time. Swanson says the same thing, fixing the cost at $3000-So does Evans; so does Besnard.
The act of the officers of the city and of the men in their employ was a trespass upon plaintiffs’ property. Por this the law holds the corporation liable. Babassa v. Orleans Navigation Company, 5 La. 461; Mabrie v. Canal Bank, 11 La. 83; McGary v. City of Lafayette, 6 An. 460.
The only remaining question is the amount of damages which should be awarded. These damages consist of the value of the property destroyed and the expense and loss which its destruction caused. Upon this point we think the judgment of the district court should be amended so as to reduce the amount allowed by it to thirty thousand dollars.
■ It is therefore ordered, adjudged, and decreed that the judgment of the district court be amended so as to reduce the sum allowed by it to thirty thousand dollars, and that thus amended the judgment be affirmed. Appellants to pay costs in the court below; those of the appeal to be paid by appellees.
Behearing refused.